UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bureau of Engraving, Inc.,

Plaintiff,

v.

Graphics Communications International Union Local 1B,

Defendant.

Civ. File No. 00-726 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff Bureau of Engraving, Inc.'s Motion to Vacate Arbitration Award and Defendant Graphic Communications International Union Local 1B's Motion to Confirm Arbitration Award. For the reasons that follow, the Court grants Defendant's Motion and denies Plaintiff's Motion.

**BACKGROUND**

This case arises out of a grievance filed by Defendant Graphic Communications International Union Local 1B ("Union"), contesting the decision of the Bureau of Engraving, Inc. ("Bureau") to terminate the employment of Linda Puffer ("Puffer"). Puffer began her employment at the Bureau in 1981. She sustained a work-related injury in 1990. After years of only partially successful treatment, including reduced hours and light duty, she returned to her previous full-time position at the Bureau in June 1997. Several days after she returned to work, Puffer experienced pain in the area of her prior injury. She sought treatment, and

FILED MAR 01 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD MAR 01 2001
DEPUTY CLERK

her physician recommended that she remain off work until she could be seen by a specialist. On June 19, 1997, Puffer secured a two-week medical leave of absence from the Bureau. The letter granting Puffer's request for medical leave did not, however, specify a date by which she was to return to work.

Puffer called the Bureau on July 1, 2, and 3, 1997, to say that she was still on medical leave and would not be at work. The Bureau believed that Puffer's medical leave expired on June 30, 1997, and thus counted her absences at the beginning of July as unexcused absences. On July 7, 1997, the Bureau informed Puffer that it was terminating her employment for excessive absenteeism under the parties' Collective Bargaining Agreement ("CBA").

The Union grieved Puffer's termination. According to the Union, Puffer's absences on July 1, 2, and 3 were medically necessary and should have been excused by the Bureau. The parties were unable to resolve the grievance informally. Pursuant to the terms of the CBA, they submitted the issue to arbitration.

Section 35 of the CBA sets forth the Bureau's attendance policy, defines various types of absences, and provides that the "corrective action" for 13 absences is termination. (Wood Aff. Ex. A, § 35.) The arbitrator determined that Puffer had accrued 13 absences within the meaning of section 35 of the CBA. (Wood Aff. Ex. C, at 37.) However, the arbitrator also found that the Bureau's termination of Puffer violated section 4(b) of the CBA, which requires just cause for the termination of a Union employee. (Id. at 38.) Thus, the arbitrator

ordered the Bureau to reinstate Puffer, and awarded her back pay. (Id. at 40-41.)

**DISCUSSION**

**A. Standard of Review**

The Court's review of a final arbitration decision is narrow. Trailmobile Trailer, LLC v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO, 223 F.3d 744, 746 (8th Cir. 2000). Where, as here, the parties agreed to submit grievances to arbitration, the Court may vacate an arbitration award only if the award exceeds the arbitrator's power, 9 U.S.C. § 10(a)(4), or does not "draw its essence" from the CBA. Osceola County Rural Water Sys., Inc. v. Subsurfco, Inc., 914 F.2d 1072, 1075 (8th Cir. 1990). Indeed, "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960). Thus, "as long as the arbitrator is even arguably construing or applying the contract" the Court cannot overturn the award even if "convinced [the arbitrator] committed serious error." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

**B. Just Cause**

The CBA gives an arbitrator broad authority to decide disputes between the Bureau and the Union. The parties agreed to submit to arbitration "[a]ll disputes and grievances arising over the interpretation of, or adherence to, the terms and provisions of the [CBA]." (Wood Aff. Ex. A, § 3(a).) The explicit terms of the CBA thus do not limit the arbitrator's

authority in any way. However, the Bureau argues that the CBA implies a limit on the arbitrator's authority. According to the Bureau, because the CBA sets forth specific conduct that may result in termination, an arbitrator may decide only if the employee committed that specific conduct, and may not thereafter inquire further into whether there was just cause for the discipline imposed as a result of the employee violating the conduct requirements. In other words, the Bureau contends that the arbitrator's finding that Puffer had enough absences for termination under section 35 precludes any further inquiry, and it was improper for the arbitrator to examine whether the Bureau had just cause to terminate Puffer's employment.

In his decision, the arbitrator noted that the parties stipulated to the following issue: "Whether the Employer had just cause to terminate the employment of grievant, Linda Puffer, and if not, what should be the remedy?" (Wood Aff. Ex. C., at 10.) The Bureau's argument that the arbitrator improperly considered the just cause requirement of section 4(b) is directly contrary to this stipulated issue. The Union contends that the Bureau cannot complain of the arbitrator's decision regarding the lack of just cause when the Bureau stipulated that the dispute between the parties concerned whether there was just cause for Puffer's termination. The Court agrees.

It is clear that the parties' decision to frame the issue as one involving just cause colored the arbitrator's decision in this matter. For example, the arbitrator began his opinion

by stating that he would examine whether Puffer violated section 35[1] as part of his determination "as to whether the grievant was terminated for just cause under Section 4(b)." (Wood Aff. Ex. C., at 31.) Later in the opinion, he reiterated that section 4(b)'s just cause requirement applies to discipline or termination pursuant to section 35 of the CBA. (Id. at 34.) The parties' stipulation clearly gave the arbitrator the authority to decide whether the Bureau had just cause to terminate Puffer's employment. Trailmobile Trailer, 223 F.3d at 747. "[H]aving requested that the arbitrator determine whether [the employee] was discharged for just cause, [the employer] will not now be heard to complain that the arbitrator performed the analysis that it requested instead of making a purely factual finding." Id. The arbitrator did not err in determining whether the Bureau had just cause to terminate Puffer's employment.

The Bureau asserts that the arbitrator's decision does not derive its essence from the CBA because the arbitrator ignored the plain language of the CBA, which allows the Bureau to terminate an employee who accrues 13 absences. In support of this assertion, the Bureau points to language in several court of appeals cases that a general "for cause" provision in a contract does not override an express provision that allows termination for specific conduct. See, e.g., Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431, 102 F.3d 1464, 1469 (1996). Those cases, however, are not on point. In those cases, the express

---

[1] Before the arbitrator, the Bureau also argued that Puffer violated section 23(a) of the CBA, which sets forth the requirements for securing medical leaves of absence. The arbitrator found that Puffer did not violate section 23(a), and the Bureau has not appealed this decision.

provision allowing termination for specific conduct was unambiguous. Here, the attendance policy is ambiguous, and the arbitrator's interpretation of that ambiguous language is subject to the highest deference. See Keebler Co. v Milk Drivers & Dairy Employees Union, Local No. 471, 80 F.3d 284, 288 (8th Cir. 1996) ("We could not disturb the arbitrator's award if he interpreted ambiguous language in the collective bargaining agreement . . . to support his conclusion . . ., even if his interpretation of the agreement had been erroneous.").

The attendance policy states that the Bureau "may relax the standards or requirements of this policy, or grant leniency with respect to discipline under this policy, if it concludes that such action is warranted under individual circumstances." (Wood Aff. Ex. A, at 36.) Thus, the policy itself suggests a case-by-case approach that supports the arbitrator's decision to review under a just cause analysis the decision to terminate Puffer's employment. Trailmobile Trailer, 223 F.3d at 748. The arbitrator's interpretation of the CBA clearly "draw[s] its essence" from the CBA. Subsurfco, 914 F.2d at 1075. The Court is therefore bound to uphold that interpretation.

### C. Bureau's Violation of CBA § 3(g)

The Union contends that the Bureau is in violation of the escrow provision of the CBA, which provides that the party losing an arbitration "shall immediately become and remain in compliance" with the arbitrator's award, and, if the award "calls for the payment of money, such sum shall be deposited in a local bank in escrow within ten (10) days of the date of the award, and shall remain there until determination on appeal." (Wood Aff. Ex. A,

§ 3(g).) The Union alleges that the Bureau has not complied with the arbitrator's award, nor has it escrowed any of the back pay the arbitrator found Puffer was due. The Bureau acknowledges that it has violated section 3(g) of the CBA, but asserts that the violation has no bearing on the instant appeal.

The CBA does not set forth a remedy for a violation of section 3(g). Nor does the Union argue that any remedy is available for such violation. Instead, the Union asks the Court to draw an adverse inference from the Union's failure to comply with section 3(g). Specifically, the Union contends that the Bureau's violation of section 3(g) "is consistent with its general practice of picking and choosing which portions of the contract it will follow." (Def.'s Supp. Mem. at 20.) The Court will decline the Union's request to draw an adverse inference from the Bureau's admitted failure to comply with the provisions of section 3(g) of the CBA. The Court cautions both parties, however, that the explicit violation of the straightforward terms of the CBA might in a different case be viewed as a lack of good faith, and might subject the violating party to adverse inferences or, in the appropriate case, penalties.

**D. Determination of Number of Absences**

The Union seeks to overturn the arbitrator's conclusion that Puffer had accrued 13 absences under the CBA. However, this is a determination of fact that the arbitrator had the power to make under the CBA, and thus is simply not reviewable on appeal. See Excel Corp., 102 F.3d at 1467 (court reviews arbitrator's award to determine only whether parties

agreed to arbitrate and whether arbitrator had power to make award).

**E. Attorneys' Fees**

The Union seeks to recover the attorneys' fees it has expended in bringing this motion to confirm the arbitrator's award. The Union does not, however, cite the Court to any authority that it is entitled to recover attorney's fees. The Bureau points out that the terms of the CBA do not authorize the recovery of fees. Absent some authority that an award of attorneys' fees is proper in a case such as this, the Court will not award the Union its fees.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court upholds the arbitrator's award. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Vacate Arbitration Award (Clerk Doc. No. 10) is **DENIED**; and

2. Defendant's Motion to Confirm Arbitration Award (Clerk Doc. No. 13 ) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 1, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995